WESLEY C. WORRILL, plaintiff in error, *vs.* VIRGILIUS M. BARNES, defendant in error.

1. Title to the crop raised on rented land is not in the landlord so as to empower him to sue for and to recover it in trover, or, waiving the *tort*, to sue for its value in assumpsit. He has a special lien upon it, attaching from its maturity, but to be enforced by distress warrant: Code, sections 1976, 2285.

2. It follows that suit upon an account thus: "Wesley C. Worrill to Virgilius M. Barnes, Dr. To one bale of cotton, received from W. J. Paschal, belonging to Barnes, for rent from Paschal, weighing three hundred and sixty-five pounds, $43 56," cannot be maintained, where Paschal had sold the same to Worrill, especially if the latter were an innocent purchaser without notice that rent was due, but believing it was paid by other property.

3. The special lien which covers the crop from maturity is only for the rent of the land which produces it; all other liens for rent attach only from date of levy by distress warrant. So that, as the rent of the land producing this cotton was only $30 00, and the judgment was for more, $40 00, even if a distress warrant had been levied after the cotton was bought by Worrill, it could have availed only for $30 00, the amount of the special lien. Code, sections 1977, 2285, 2286.

Landlord and tenant. Lien. Distress warrant. Before Judge GIBSON. McDuffie Superior Court. March Term, 1876.

Reported in the opinion.

H. C. RONEY, by brief, for plaintiff in error.

PAUL C. HUDSON, for defendant.

Worrill *vs.* Barnes.

JACKSON, Judge.

1. Barnes sued Worrill for $40 00, the proceeds of one bale of cotton, in the county court, and judgment was rendered for plaintiff; the case was carried by *certiorari* to the superior court, and there the judgment of the county court was affirmed. Worrill, being still dissatisfied, brought the case to this court, and the question is whether, under the facts, Barnes can recover the value of this bale of cotton from Worrill. Those facts are, that one Paschal rented from Barnes, *as agent*, a house and lot, at the price of $120 00, and from Barnes, *individually*, a blacksmith shop at $25 00, and ten acres of land at $30 00. The bale of cotton was raised on this ten acre lot of land, and was sold by Paschal to Worrill, and Barnes sued for its value on an account, as follows: "1875. Wesley C. Worrill to V. M. Barnes, Dr. To one bale of cotton received from W. J. Paschal, belonging to Barnes, for rent from Paschal, weighing three hundred and sixty-five pounds, at twelve cents, $43 56." No distress warrant had ever been sued out and levied on this cotton, but title to it was asserted by Barnes, because it was raised on his land, and Paschal, his tenant, sold it to Worrill. If this cotton was raised on Barnes' land he had a special lien upon it to pay for *the rent of the land*, but not of the house and lot or of the blacksmith shop. The rent of the land was but $30 00, yet he 'recovered $40 00, too much, even if he had followed the law and distrained for his rent. So that both courts below, we think, were clearly wrong in awarding a judgment for the $40 00 on this ground. But did Barnes have title to the cotton so as to sue for it in trover, or to waive the *tort* and sue in assumpsit, which he seems to have done? It would be queer if he had a lien on his own property; yet, the statute gives him a lien on this cotton, therefore it would seem that this cotton was not his, but Paschal's, and that he had a lien only upon it, not a title to it.

2. It is true, that in 41 *Georgia Reports*, in two cases, this court held that a homestead, or exemption, rather, could not be taken in the produce of a farm until the rent was paid;

but in those cases the property was distrained, and the contest was between the distress warrant and the homestead. And it is true, that in one of those decisions, or opinions, there is language to the effect that title does not inhere in the tenant till the rent is paid; but we apprehend that the meaning is, that the tenant holds the property subject to the rent, not .that the absolute title is in the landlord, but that he has a lien for rent superior to the exemption rights of the tenant. That is the decision in both cases, and we think it sound : 41 *Georgia Reports*, 95, 622. That this is the meaning and the whole scope of the judgment, we think will appear from 50 *Georgia Reports*, 213, 590, and 52 *Ibid.*, 656, where the title is evidently treated as in the tenant, but subject to the lien of the landlord for rent.

3. So, too, the Code, section 1977, does not vest title, but only a lien, special for rent of the land that made the crop, good from its maturity, but general in respect to other rent, and good only from levy. Both are to be enforced by distress warrants, for the statute says expressly : "The special liens of landlords shall date from the maturity of the crop, unless otherwise agreed on, but shall not be enforced by distress warrant until said rent is due, unless the tenant is removing his property," etc. We are not aware of any law which would authorize the landlord, without a distress warrant, to sue for the entire property, or its value, and recover it, especially if it be in the hands of a purchaser for value, without notice that rent was due on it. It seems, too, in this case, that other cotton, corn, fodder, etc , was levied on by distress warrant; if so, it would seem right that it should go to satisfy this special lien for rent of the land which raised it, before the landlord could distrain under his special lien and recover from an innocent purchaser.

In view of all the facts of this case disclosed in the record, we feel constrained to differ from the county court and the superior court of McDuffie, and to reverse the judgment.

Judgment reversed.