SAULSBURY, RESPESS & Co., plaintiffs in error, *vs.* JOHN D. MCKELLAR, defendant in error.

1. The sayings of a person in possession of personal property, such as cotton, on his way to deposit the same in a warehouse, derogatory to unincumbered title in himself, are admissible against all persons holding under him.

2. Where Saulsbury, Respess & Co., received cotton on which McKellar had a special lien for rent as landlord, with full knowledge thereof, and McKellar sued out, or was about to sue out, a distress warrant for the rent thereon, and Saulsbury, Respess & Co., informed McKellar that there was cotton enough to pay what the tenants owed them and him too, and thereby McKellar was prevented from asserting his landlord's lien by distress, and the cotton was converted to the use of Saulsbury, Respess & Co.:

*Held,* that an implied promise to pay the rent arose *ex equo et bono* from these facts, and that McKellar was entitled to recover the rent of the

land on which the crop was made to the extent of the value of the cotton.

3. The landlord's special lien for rent on the crop raised on the land rented, dates from the maturity of the crop, and is superior to all liens except taxes.

Evidence.    Landlord and tenant.    Contracts.    Liens. Before Judge HILL.    Bibb Superior Court.    October Adjourned Term, 1876.

McKellar brought assumpsit against Saulsbury, Respess & Co., alleging, in substance, as follows:    He rented a certain plantation in Bibb county to P. M. and W. H. Curry, and took a rent note for $200.00, to be paid out of the proceeds of the first cotton gathered.    From the cotton raised on the place, the Currys carried six bales to defendants to be sold on commission in the usual manner, which was done.    Plaintiff's lien for rent (due and unpaid) of the place had attached before such receipt by defendants, and they had notice. of the same.    Nevertheless, they have sold the cotton and converted the proceeds to their own use, and thus have undertaken and promised to pay plaintiff $194.00, besides interest.

Defendants pleaded the general issue, and denied any contract or notice of lien.

On the trial, the evidence for plaintiff was, in brief, as follows:    He rented the place and took the note as alleged in the declaration.    Only the two Currys mentioned signed, but there were several others in the family who agreed to it verbally.    He had several conversations with members of the defendants' firm; stated to one of them in May of that year (1873) who were his tenants; told defendants that the Currys needed assistance, and after he received his rent, they could take the rest of the cotton.    Soon after, one of the Currys brought him a draft from defendants to sign, and upon inquiring why they wanted his signature, he was informed that it was because otherwise he might take the cotton by his superior lien.    About the time he thought cotton

ought to be picked, he saw W. N. Curry go by his house carrying cotton to defendants' warehouse; he asked where the cotton came from, and was informed that it was raised on his place. Six bales were thus carried. He went to the defendants, and asked how much cotton they had from the Currys; they replied that he need not trouble himself about the amount, as there was enough to pay both them and him. He did not trouble further about the matter, and delayed taking legal steps to secure himself. Shortly after, probably the next day, he wanted money, and thought he would sell his share of the cotton. When he called on defendants, they would not give him a positive answer; said they did not know whether either he or the Currys had cotton there. After some talk, he went off, and took out a distress warrant. The officer could not find the cotton, and they declined to point it out; they had sold it. It was worth about fifteen cents a pound.

The evidence for defendants was, in brief, as follows: They did not know until the beginning of proceedings against them that P. M. Curry was a tenant of plaintiff; do not remember his ever so stating before he took out the distress warrant. M. P. Curry (a son of P. M.) applied to them for money; he said he was a tenant of plaintiff; hence they sent him to plaintiff with the draft to sign. One morning the plaintiff went into defendants' office and said that Curry had six bales of cotton in their hands, and that he owed plaintiff a certain amount for rent. Nothing was said as to where the cotton was raised. One of defendants replied if that was so, there was enough to pay them both; on investigation he found there were only four bales belonging to P. M. Curry and one small one belonging to W. A. Curry. There is some evidence to identify him with W. N. Curry. Defendants sold the cotton and applied the proceeds to the payment of advancements made by them. One of defendants testified that, after the conversation with plaintiff, they apprehended trouble, and hence sold the cotton.

The jury found for plaintiff. Defendants moved for a new trial, on the following among other grounds:

1. Because the verdict was contrary to law and the evidence.

2. Because the court allowed plaintiff, over defendants' objection, to testify as to the admissions of Curry that the cotton was raised on his place.

3. Because the court erred in charging as follows: "I charge you that the landlord has a lien on crops raised on the plantation for rent, which is paramount to all other liens except taxes and things of that sort; he has a superior lien to anybody furnishing supplies, or any contract the tenant makes with other people. And the lien exists without suing out a distress warrant;. the lien exists as soon as the cotton is raised."

The motion was overruled, and defendants excepted.

E. F. Best; G. W. Gustin, for plaintiffs in error.

J. C. Rutherford; Hill & Harris, for defendant.

Jackson, Judge.

McKellar sued Saulsbury, Respess & Co., in *assumpsit*, on an implied promise on the part of the defendants, to pay him the value of certain cotton on which he had a lien, the same having been raised on land which McKellar had rented to certain tenants by the name of Curry, and which the defendants had converted to their own use, after notice of plaintiff's lien, and alleging that they received the cotton subject to said lien.

The defendants pleaded the general issue, and denied all notice of the lien. The jury, on this issue, found for the plaintiff, when the defendants moved for a new trial, which motion was overruled, and the defendants excepted.

When this case was brought by the defendants here before, we granted a new trial, on the ground that the court

erred in charging the jury, that if land was rented to the Currys by McKellar, and cotton was raised on that land, that then they might infer that this cotton at Saulsbury, Respass & Co.'s warehouse, stored as the cotton of Peter M. Curry, and sold by them, was the cotton raised on McKellar's farm, and that it devolved on defendants to prove that it was raised elsewhere. We held that the burden was on McKellar, the landlord, to show that this cotton was raised on the land which he had rented to the Currys.

1. On the present trial, now brought here, it seems that the plaintiff, McKellar, assumed this burden, and proved that the cotton was raised on his land, provided certain evidence was admissible. And the first question is, was it legal for McKellar to testify that the Curry who carried the cotton to Saulsbury, Respass & Co.'s warehouse, while taking it there on his wagon, told him (McKellar) that it was raised on his land. If that evidence is legal, the fact was proved; if it was not legal, the fact that the cotton was raised on McKellar's land, and that he had the special lien, was not proved.

We think that it was admissible and legal to prove by these sayings of Curry, while in possession of the cotton, that it came from McKellar's, and that McKellar had the landlord's lien. The principle is, that what one in possession of property says derogatory to his title, is admissible, if made before any adverse title accrued. 8 *Ga.*, 66; 15 *Ga.*, 202; 20 *Ga.*, 240. Here, Saulsbury, Respass & Co. claimed title from Curry, and so did McKellar hold his lien, and the principle ruled in the cases cited fully covers the question now made in this case.

2. It would seem, then, that the plaintiff has brought himself within our ruling before, and is entitled to recover. The proof was by the plaintiff, (and it was with the jury to believe him or not, as they saw fit,) that the defendants had notice of the lien, admitted that they had the cotton, and that it was enough to pay off what the Currys owed the

plaintiffs and themselves, too, and that he was, by this state-ment, prevented from levying a distress warrant which he had sued out. These facts raised an implied *assumpsit* to pay McKellar when the cotton was sold, and, under all the facts, if he was believed, he was entitled to recover. It will be seen that this case differs from 57 *Ga.*, 404, quoted by counsel for plaintiffs in error. A distress warrant was sued out here, or about to be, when the plaintiff was lulled into security by the implied promise that the defendants would pay him when they sold the cotton; while there, nothing of the sort occurred, and the question was, in that case, in whom was the title—in the landlord or the tenant?—and it was held to be in the tenant, but subject to the lien of the land-lord. There was no implied promise at all there, or any lulling the landlord into security, but a naked attempt to waive the *tort* and sue in *assumpsit on the title of the land-lord.*

3. In respect to the priority of the landlord's lien on the crops raised on his land for the year he rented it, there can be no doubt. It has been, over and again, so ruled by this court, and the Code itself is plain. Code, § 1977. Nothing in 57 *Ga.*, 404, antagonizes the principle that the lien of the landlord on the crop raised on his land the year when he rented it, dates from the maturity of the crop; but the doctrine is as-serted there. In that case, however, the landlord attempted to assert his priority of lien for the rent of other lands rented to the tenant, as well as the particular tract or lot which made the crop levied on; and we held that his lien was spe-cial and superior as to the rent of the land on which the crop was raised, dating from maturity of crop as to that rent; but that it was general, and dated from the levy on the crop as to the other land which had not made the crop levied on.

On the whole, there have been three verdicts, all for the plaintiff; the verdict this time is sustained by the evidence, and meets with the approval of the judge who tried the case; no law has been violated, and we feel constrained to

end the litigation by affirming the judgment. See 57 *Ga.*, 277.

Judgment affirmed.