## STOKES *et al. vs.* GILLIS.

That, after a landlord has become security for his tenant upon a promissory note for supplies, the payee of the tenant loaned the tenant other money and took a mortgage on the cotton crop of the tenant to secure the additional advance, will not relieve the surety, nor would the fact that the payee, on account of this second indebtedness, took cotton upon which the surety had a landlord's lien for rent.

(*a*) If the surety was injured by such payee's removal of the cotton upon which the surety had a special lien as landlord and a general lien for rent, whether such cotton had been mortgaged to the payee or not, the surety could have recovered from such payee the value of the rent or the amount in which he had been damaged.

(*b*) There is no allegation of the insolvency of the payee, so as to give the plea of the surety in this case any equitable operation whatever.

June 4, 1888.

Principal and surety. Debtor and creditor. Landlord and tenant. Before Judge FORT. Stewart superior court. October term, 1887.

Reported in the decision.

WATTS & HICKEY and B. P. HOLLIS, for plaintiffs in error.

J. L. & O. J. WIMBERLY, *contra.*

BLANDFORD, Justice.

Gillis brought his action against Johnston, as principal, and J. W. and J. H. Stokes as securities, upon a promissory note. To this suit they pleaded, first, the general issue, and filed two other pleas, which are as follows:

"2. And said defendants, for special plea in this behalf, say that plaintiff ought not to further maintain his said cause of action against them; because these defendants say that the obligation sued on by plaintiff was a promissory note executed by Columbus J. Johnston as principal, and these defendants as sureties for the said principal. These defendants say that said principal had undertaken to rent and carry on the farm of first named defendant, J. W. Stokes, for which he had agreed to pay said J. W. Stokes 12 bales of cotton weighing 500 pounds each, for the year 1886. It then transpired that Columbus J. Johnston stood in need of supplies for a four mule farm, and feed for a fifth mule. It was accordingly agreed by and between plaintiff and these several defendants, that defendant Johnston should borrow of plaintiff the sum of two hundred dollars for such purpose, and these defendants should become the sureties for the undertaking of said principal, which they accordingly did. Defendants say that the plaintiff accordingly furnished to Columbus J. Johnston the $200, and he commenced his farm. These defendants say that they did not then know that Columbus J. Johnston then owed to plaintiff any other sum than this, and said plaintiff well understood what said Columbus J. was to pay for rent. But it afterwards transpired that plaintiff assisted said Johnston further, and created a new debt for supplies. Plaintiff and said Columbus accordingly agreed together concerning this new debt, which eventuated in Columbus J. Johnston's giving said plaintiff a mortgage upon the entire crop of said defendant, J. W.

Stokes, for the payment of this debt. These defendants say that they knew nothing of this mortgage, and it was impossible for J. W. Stokes to look closely after his affairs, by reason of the fact that after said contract was entered into, he became broken in health and was confined to his bed in the town of Lumpkin. Defendants say that Columbus J. made twenty-four bales of cotton that year, to which defendant, J. W. Stokes, was of right entitled to a statutory lien as landlord on twelve bales for rent, as aforesaid. These defendants say that plaintiff, well knowing the contract and J. W. Stokes' prior lien, connived with said Columbus J. Johnston to have first delivered to plaintiff cotton enough from said farm to pay his debt secured by mortgage. To carry out this purpose he was very diligent, and made frequent visits to said farm and inquiries concerning the amount Johnston would make, and was well posted. By his superior influence over said Johnston, he induced him to secretly and without the knowledge of defendant J. W. Stokes eloign and remove said cotton from said premises and deliver the same to said plaintiff, until nearly all of said cotton was so removed. While said Johnston was so engaged in removing said cotton, defendant J. W. Stokes was informed of the conduct of said Columbus J., and immediately distressed him, and secured about six bales of cotton to defendant J. W. Stokes. These defendants say that said Johnston could and would have paid said rent, but for the fact that he was under the influence of plaintiff and induced by him to deliver said cotton on his aforesaid debt. These defendants say that said plaintiff, in dealing with said principal, Columbus J. Johnston, well knew he was depriving defendant J. W. Stokes of his lien upon said cotton for his rent, and that he was injuring said defendant, but contrary to his duty to these defendants as securities, he did all in his power to take that on which defendant relied for support; and in so conniving and secretly plotting with said principal, he has injured and damaged these defendants in the full amount of the principal and interest due on said promissory notes, by taking it out of the power of defendant J. W. Stokes to make effectual his distress warrant. By so doing, he has exposed these defendants to greater risk and liability as sureties, and therefore defendants pray the judgment of this court that they be each of them discharged from further liability on said obligation; and of this defendants put themselves upon the country.

"3. And for further special plea in this behalf, these defendants say that at the time of the making of the note whereon they are pledged as sureties, it was well-known to plaintiff that defendant Johnston was in such pecuniary condition that his only means for paying the aforesaid note and defendant J. W. Stokes' rental, was out of the cotton crop he was to raise on said defendant's land which he was to cultivate. It was well understood by plaintiff and these defendants that this cotton was to be so raised by Johnston and paid on these two

claims. But defendants say that, notwithstanding this, said plaintiff afterwards dealt with defendant, Johnston, without the knowledge or consent of these defendants, and took a mortgage on this identical cotton, in which it was stipulated that no other debt should be paid by said Johnston out of said cotton until the aforesaid mortgage was paid. This act of plaintiff in thus tying up said Johnston and bringing him under obligation to prefer a new debt to the obligation he had already made with plaintiff and these defendants as sureties, became a new contract touching the same sources of payment and subject-matter of the contract plaintiff has sued on, and has hindered and delayed the payment of the first debt to such an extent that defendants were entirely deprived of the means of applying said cotton crop to the payment of said debt. Defendants say this is a new contract, inconsistent with the one whereon they are sued, and has resulted in consequent damage to these defendants to the extent of the entire debt, and they are therefore discharged. And of this they put themselves upon the country."

The defendants then by leave of the court amended their pleadings by introducing a further plea, which was a plea of payment. The plaintiff thereupon demurred to the 2d and 3d pleas above set forth, on the ground that they were insufficient in law to bar the plaintiff's right of recovery; and the court sustained the demurrer and dismissed the pleas. This ruling of the court is excepted to.

We think the court was right in sustaining this demurrer. Leaving out of consideration the fact that J. W. Stokes was the landlord of Johnston, the principal in this debt, how did the matter stand? Did Gillis do anything to relieve these sureties of their liability to pay the debt? He loaned Johnston other money after this note had been given, and took a mortgage on the cotton crop to secure this additional advance; but he had a right to do so, and it did not relieve the sureties It might have injured them, or might have benefited them. Possibly Johnston would not have raised anything on this land but for the subsequent advance by Gillis. And we know of no law to inhibit Gillis from

trading with Johnston just because these parties had become his sureties upon a former debt.

If Gillis, on account of this second indebtedness, took cotton upon which J. W. Stokes had a landlord's lien for rent, and thereby injured J. W. Stokes, one of the sureties, it did not injure the other surety; and if that was an injury to J. W. Stokes, he had his remedy in an action against Gillis for removing the cotton upon which he (Stokes) had a lien—a special lien as a landlord and a general lien for rent. The case of *Saulsbury, Respess & Co. vs. McKellar*, 59 *Ga.* 301, is in point here. Saulsbury, Respess & Co. bought from the tenant of McKellar the cotton which the tenant raised on McKellar's land, and upon which McKellar held a landlord's lien for rent; and this court held that McKellar could recover from Saulsbury, Respess & Co. the value of his rent, of which he had been thus deprived. So could J. W. Stokes in the present case. Gillis took cotton from Johnston upon which Stokes had a landlord's lien. Whether it was cotton which had been mortgaged to him or not would not make any difference. The landlord's special lien on the crops of the tenant is superior to all other liens, except for taxes. Stokes could have recovered the value of the rent, or to the extent to which Gillis had damaged him, So we do not think there is anything in these pleas to constitute a bar to the right of Gillis to recover in this suit.

There is no allegation of the insolvency of Gillis, so as to give the plea any equitable operation whatever. Gillis is able, so far as the plea discloses, to respond to any action that may be brought against him.

Judgment affirmed.