## SHEALY & BROTHER v. CLARK.

1. This case upon its merits is controlled in principle by the ruling made in Saulsbury v. McKellar, 59 Ga. 301.
2. The evidence, though conflicting, was sufficient to authorize the verdict, and there was no error requiring the granting of a new trial.

Argued June 9, — Decided June 26, 1903.

Complaint. Before Judge Littlejohn. Macon superior court. January 28, 1903.

Heywood Clark sued A. E. Shealy & Brother, to recover the value of 3,711 pounds of cotton, alleging as follows: He rented a plantation to M. B. Gilmore, for the year 1901, for 10,000 pounds

of cotton, the same to be due on October 1, 1901; this contract be-
ing in terms like one that had obtained in the preceding year. The
defendants were merchants, and they furnished to Gilmore supplies
to run the farm during both years. Gilmore was the father-in-law
of A. E. Shealy. The rent of 1900 had been paid to plaintiff's
agent through defendants. About the time of harvesting the crop
of 1901 Gilmore by sickness was disabled to attend to the gather-
ing and marketing thereof, and the work of so doing was largely
superintended or looked after by A. E. Shealy. When the rent fell
due, plaintiff's agent went to defendants with a request that it be
paid, knowing that they had the business and farming operations
of Gilmore in charge. They told the agent that the crops were
late, that there would be plenty to pay the rent, and that they would
get it out and have it brought in and turned over to the agent as
rapidly as possible; and asked him not to press the matter, but to
indulge them for a short while, and the rent would be paid. Rely-
ing on these statements, the agent waited about a month; and on
again applying to the defendants for the rent, they told him that
they had been unable to get the crop gathered, that it was late
opening, that there was plenty to pay the rent, that plaintiff need
suffer no uneasiness about it, and that they would bring in the cot-
ton as rapidly as possible and turn it over to the agent. After
waiting about a month longer, the agent went to defendants and
insisted that the rent must be paid, and that he could wait no longer;
when to his astonishment the defendants told him that the crop
was short and there was not enough cotton or other produce to pay
the rent. They turned over to him 3,746 pounds of cotton, stat-
ing that that was all they had been able to collect for plaintiff, and if
they could get more they would do so. The agent suggested that he
had better sue out a distress warrant and levy on anything that might
remain on the place in the way of crops; but defendants dissuaded
him from so doing, telling him that there was practically nothing,
and that they would endeavor to get to him such remnants as there
might be. Later they turned over to him 2,543 pounds of cotton,
leaving due the amount sued for. During the time that they were
holding him off and dissuading him from enforcing the collection
of the rent note, although they knew he was relying on their rep-
resentations to him, they were collecting from the farm the cot-
ton raised thereon, selling it, and applying the proceeds to the pay-

ment, of their supply account, in disregard of the claim for rent, which they knew to be superior to their claim, and in violation of their promises. While thus defrauding the plaintiff they received from the farm an amount of cotton largely in excess of what would have been required to pay the rent; and the cotton they received from the farm was allowed by Gilmore to go into their possession and control upon the distinct understanding that they should protect and pay off the rent note.

The defendants demurred for want of a cause of action alleged, and of an allegation of damage to plaintiff from any act of defendants, and of an allegation of Gilmore's insolvency, and of an allegation that plaintiff was informed of defendants' agreement with Gilmore at the time, or that it had any bearing or influence in perpetrating fraud on plaintiff. The demurrer was overruled. Issue was taken by answer; and the testimony conflicted, but that for the plaintiff sustained his allegations. The jury found in his favor. A motion for new trial was overruled, and exceptions were taken. The motion was on the general grounds, and the following: It appears from the evidence that there was no actionable fraud, but merely an expression of opinion by defendants, coupled with a naked promise to assume the debt of another; that enough crops were raised on the rented premises to pay both plaintiff and defendants, and loss was sustained by reason of plaintiff's negligence, and not because of any act of defendants; that after he or his agent discovered that he had been deceived by defendants, he still neglected to take steps to collect his rent, and allowed Gilmore to sell enough of the crops to have paid the rent, it not appearing that defendants knew or consented for Gilmore to sell any of the crops; that there was no consideration for any promise by defendants to collect the rent; and that they were guilty of no act calculated to deceive plaintiff and to prevent him from proceeding to collect his rent, he knowing of defendants' claim and the appropriation they were making of the crops collected.

Cited by counsel, in addition to citations in the opinion: Civil Code, §§ 2693, 3656, 4938, 4944, 5424; *Tindall* v. *Harkinson,* 19 *Ga.* 450; *Allen* v. *Gibson,* 53 *Ga.* 601; *Stokes* v. *Gillis,* 81 *Ga.* 187; *Merch. Bk.* v. *McWilliams,* 107 *Ga.* 532; 8 Am. & Eng. Enc. L. (1st ed.) 638–644; 18 Id. 503 b; 18 Id. (2d ed.) 347, 350; *Wilkes* v. *Adler,* 68 Tex. 689, s.c. 5 S. W. 497; *Stavel* v. *Aikins* (Kas.), 68 Pac.

1088; Bush *v.* Willis (Ala.), 30 So. 443; Foxworth *v.* Brown (Ala.), 21 So. 413.

*J. A. Edwards, L. C. Greer,* and *Hooper & Dykes,* for plaintiffs in error. *Greer & Felton* and *Hall & Wimberly,* contra.

COBB, J. This case comes before us upon assignments of error complaining of the overruling of a demurrer and the refusal to grant a new trial. Applying the principle laid down in the case of *Saulsbury* v. *McKellar,* 59 *Ga.* 301, the petition set forth a cause of action. The fact that in that case Saulsbury had in his possession cotton which he knew was subject to a special lien for rent in favor of McKellar, and that McKellar had sued out or was about to sue out a distress warrant and levy the same thereon, would not prevent the principle ruled in that case from applying in a case like the present, where the conduct which lulled the agent of the landlord into security was at a time when Shealy was not in possession of the crop and no distress warrant was at that time actually sued out or in terms threatened. What brings the present case within the principle of the *Saulsbury* case is that the conduct of Shealy was such as to lull Greer, the agent of the landlord, into the belief that his rent was safe, and that as a consequence of this belief he allowed Shealy to take possession of the crop of the tenant, and desisted from any purpose to enforce the landlord's special lien for rent on the crop. There certainly can be no material difference in principle between a case where the landlord is so lulled into security that he allows another to take possession of his tenant's crop without any effort to enforce his lien thereon, and a case where another has already come into possession of a crop subject to the lien, with notice thereof, and the landlord is then lulled into security simply as to the necessity for the enforcement of his lien. If in the latter case, where the crop has already passed out of the possession of the tenant, an implied promise on the part of the possessor to pay the rent to the landlord would arise, it would seem that for a stronger reason an implied promise would arise to pay the rent where the landlord was lulled into security and as a consequence possession of the crop was obtained from the tenant. We can see no difference in principle between the cases. It is said, though, that the plaintiff was not entitled to recover, because there was no allegation or proof that the tenant was insolvent, and that for aught that appears the rent might have been collected from

other property of the tenant. The landlord had a special lien for his rent upon each and every part of the crop raised upon the premises, and neither the tenant nor any one else could have required him to go upon any particular part of the crop. See, in this connection, *Coleman* v. *Allen,* 79 *Ga.* 644-646 ; Couch *v.* Davidson, 109 Ala. 313, s. c. 19 So. 507 ; Taylor *v.* Felder, 5 Tex. Civ. App. 417, s. c. 23 S. W. 480. If the conduct of Shealy & Brother was such as to amount to a promise on their part to pay the rent, the plaintiff had the right to resort to this promise, notwithstanding they had left upon the premises sufficient property to pay the rent. So far as this question is concerned, the evidence was directly conflicting, and the jury could have found that there was not sufficient property left upon the premises to pay the balance due on the rent.

It was contended that the verdict was unauthorized, because the promise to pay the rent was made by one of the Shealys only, and that there was no obligation to pay the rent on the part either of the other Shealy or of the firm. On this question the evidence was distressingly conflicting, but there was evidence authorizing a finding that the Shealy who was a party to the transaction with the agent of the landlord was acting in all that he said and did in behalf of the partnership of which he was a member.

We find no error requiring a reversal of the judgment.

*Judgment affirmed. All the Justices concur.*