17803. ARMSTRONG v. REYNOLDS.

1. Though the contract in this case was one in which the subtenant, for a consideration flowing to him, agreed to pay certain rent for which the tenant was originally liable, and though this contract was not in writing, "the contract was not void under the statute of frauds, as being in parol, under the facts of the case. The transaction falls within the exception to the statute, that where there has been performance on one side, accepted by the other in accordance with the contract, the statute shall not apply."

2. Neither the exceptions pendente lite nor the motion for a new trial show cause for a reversal of the judgment. Two juries have rendered verdicts in favor of the plaintiff; the trial judge has twice approved such a finding, and no sufficient reason is shown for our interference with the judgment complained of on this the second trial of the case.

DECIDED MARCH 8, 1927.

Breach of contract; from city court of Sparta—Judge Lewis. November 19, 1926.

*T. M. Hunt, G. L. Dickens,* for plaintiff in error.

*M. L. Felts,* contra.

BLOODWORTH, J. Reynolds brought suit against Armstrong to recover the value of rent due by Armstrong as a subtenant on Reynolds' land. The jury rendered a verdict in favor of the plaintiff; the defendant brought the case to this court; and this court reversed the judgment of the trial court, as shown by 33 *Ga. App.* 27 (125 S. E. 512). Thereafter, and in due time, the plaintiff offered an amendment to his petition which was allowed. The defendant demurred to the amendment, and to the overruling of his demurrer and the allowance of said amendment he filed exceptions pendente lite. Upon the second trial the jury again rendered a verdict in favor of the plaintiff, and the defendant again brought the case to this court assigning error upon the exceptions pendente lite and upon the overruling of his motion for a new trial.

The amendment to the petition, offered and allowed before the second trial of the case, did not constitute a separate cause of action, and was properly allowed by the trial judge. Under this amendment and the evidence in support thereof the agreement between the plaintiff and the subtenant is made more explicit, and thereby an additional phase of the case is presented which was not before this court on the review of the first trial. The evidence in

Appeal and Error, 4 C. J. p. 867, n. 67; p. 868, n. 68.
Frauds, Statute of, 27 C. J. p. 355, n. 93.

the first trial shows that the plaintiff and the defendant discussed an agreement as to levying on the subtenant's crop, and also shows that the plaintiff did not levy on the subtenant's crop; but it does not show that the plaintiff and the defendant actually reached an agreement, and it does not show that the plaintiff refrained from procuring a distress warrant and levying on the defendant's crop because of an agreement. In the opinion when this case was first passed upon by this court it was said: "Counsel for plaintiff in error cites and relies on the case of *Saulsbury* v. *McKellar, 59 Ga.* 302, to support his contention, but the facts in that case clearly differentiate it from this one. This case is more analogous to the case of *Worrill* v. *Barnes, 57 Ga.* 404." The amendment to the petition, a portion of which is hereinafter quoted, while it does not change the cause of action, brings the case within the ruling of the *Saulsbury* case and shows that the plaintiff was "lulled into security" by the express promise of the defendant to pay the rent to the extent of 1,000 pounds of lint cotton, which promise the plaintiff acted on to his detriment, and because of which he did not levy a distress warrant on the crop grown by the defendant. The amendment to the petition, offered on the second trial, alleged that the plaintiff "notified said Armstrong that said crops which were then in possession custody and control of Armstrong were impressed with this plaintiff's lien, and that this petitioner expected to enforce the same, . . and did at said time give due notice to the said Armstrong of the existence of this petitioner's lien. . . After petitioner's notice to Armstrong of the existence of his lien and of his intention to enforce it, Armstrong then *agreed* to hold and keep the crops raised on said premises until petitioner could undertake to satisfy his lien for rent on all of the premises rented by Jordan from the crops made on the portion which Jordan cultivated, *and agreed with petitioner* that if Jordan (the original tenant) did not pay all of the rent, that *as a consideration* for this petitioner withholding the enforcement of his special lien for rent on the portion of the crop raised on petitioner's land cultivated by Armstrong during said year that he, Armstrong, would pay the balance of the rent contracted to be paid by Jordan to petitioner, provided it did not exceed one thousand pounds of middling lint cotton, and petitioner *agreed to accept that, and did withhold the enforcement of his landlord's lien by distress warrant* on the parts

of the crops made on the lands cultivated by Armstrong, and did take all crops raised by Jordan on land cultivated by Jordan, and there was an insufficient amount to pay petitioner's lien against the crops raised on said lands cultivated both by Jordan and Armstrong. . . Armstrong applied the 1,000 pounds of cotton raised on the portion of land cultivated by him . . to the payment of a debt owed by Jordan to Armstrong & Company. . . Defendant by his conduct *prevented* this petitioner from enforcing his landlord's special lien against the crops raised on the portion of the land cultivated by defendant, and . . the promise made to this petitioner by Armstrong *and acted upon by petitioner to his injury* is a sufficient consideration to support petitioner's claim against defendant for the value of said 1,000 pounds of cotton." (Italics ours.) In support of these allegations the plaintiff testified: "I was going to foreclose a distress warrant on all the crops at that time. . . It was then that Mr. Armstrong promised me he would pay if I would not levy on his cotton. *Armstrong promised to pay that rent if I would not proceed against him.* I never did sue out a distress warrant against Armstrong, *because* he told me he would pay it. . . Mr. Armstrong said, 'You clean up Jordan.' I told him 'All right, I will go ahead.'" (Italics ours.) The foregoing and other evidence shows that, *because* of Armstrong's promise to pay, the plaintiff refrained from procuring a distress warrant and levying on Armstrong's crop; that Armstrong failed to pay as per his agreement, and that plaintiff was damaged as a result thereof. The statute of frauds requires that "a promise to answer for the debt, default, or miscarriage of another" must be in writing; but exceptions to this rule are "where there has been performance on one side, accepted by the other in accordance with the contract;" and even "where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance." Civil Code (1910), § 3223 (2, 3).

Though the contract in the instant case was one in which the subtenant, for a consideration flowing to him, had agreed to pay certain rent for which the tenant was originally liable, and though this contract was not in writing, "the contract was not void under the statute of frauds, as being in parol, under the facts of the case. The transaction falls within the exception to the statute,

that where there has been performance on one side, accepted by the other in accordance with the contract, the statute shall not apply." *Flagg* v. *Hitchcock,* 143 *Ga.* 380 (2) (85 S. E. 125). See also *Wooten* v. *Wilcox,* 87 *Ga.* 474 (13 S. E. 595); *Goolsby* v. *Bush,* 53 *Ga.* 353 (1); *Alford* v. *Davis,* 21 *Ga. App.* 820 (2) (95 S. E. 313); *Holcomb* v. *Mashburn,* 10 *Ga. App.* 781 (74 S. E. 307). The contract between the plaintiff and the defendant, so far as it obligated plaintiff, was performed, and the defendant, having received the benefit of this performance, is bound by the terms of the contract.

2. Neither the exceptions pendente lite nor the motion for a new trial show any cause for a reversal of the judgment. Two juries have rendered a verdict in favor of the plaintiff; the trial judge has twice approved such a finding, and no sufficient reason is shown for our interference with the judgment complained of on this the second trial of the case.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*