Rome Railroad Co. *v.* Chattanooga, R. & C. R. R. Co.

1. Where a railroad company, by contract express or implied, admits another company into the possession, use and occupation, jointly with itself, of its depot, yards, yard-tracks, and other terminal facilities, the relation of landlord and tenant is established between the two companies and continues, if no term be fixed by contract, so long as such joint possession, use and occupation may last. And if no amount of compensation be agreed upon, the law will imply an undertaking to pay such amount as may appear to be fair and reasonable. Under the statutory system established by the code, this compensation is, in its nature and character, rent, and may be collected by distress warrant sued out by the landlord company on affidavit setting forth and claiming a specific amount as due for rent, the tenant having, of course, a right to controvert the claim by counter-affidavit, as may be done in other cases of distress for rent.

2. If, in the arrangement between the two companies, it was contemplated and understood that, as part of the means of enjoyment of the rented premises, the tenant should have the use upon the premises of some of the landlord's servants and rolling-stock, whether continuously or only occasionally, and these were let with the premises in one and the same contract, the compensation for the whole in one gross sum, the realty element being the main consideration and the other elements only incidental, may be treated as rent and collected by distress warrant.

3. It is not manifest that the price paid by another company for a similar occupation of the premises, after the occupation of the outgoing tenant company had ceased, would be admissible evidence upon the question of the amount of rent which this company ought to pay.        *Judgment reversed.*

March 26, 1894. Argued at the last term.

Distress warrant. Before Judge Henry. Floyd superior court. March term, 1893.

The affidavit dated May 4, 1891, upon which the warrant issued, alleged, that the Chattanooga, Rome

& Columbus Railroad Company was indebted to the Rome Railroad Company $32,500 "for the rent of depots and depot buildings and yards, tracks and side-tracks of the Rome Railroad Company in the city of Rome, Georgia," describing their location, "and also for the rent of the rights and privileges incident to the use and occupation of the said above named property since the 18th day of July, 1888, and for the rent of the terminal facilities, rights, privileges and franchises, and for the rent of the freight and passenger privileges in the city of Rome and enjoyed by the said Chattanooga, Rome & Columbus Railroad Company since the 18th day of July, 1888, and also for the rent of box-cars, caboose-cars and switch-engines since the 18th day of July, 1888, in the sum aforesaid." Counter-affidavit was made, that the sum distrained for was not due. At the conclusion of the testimony, defendant moved a nonsuit on the grounds, that under the evidence the remedy by distress warrant does not lie; that no contract is shown to pay any fixed sum as rent in money or specifics, nor is any custom shown by which a payment in specifics may be implied or the value thereof shown; that no term is shown; that the use of plaintiff's property was a mere license, revocable at the will of plaintiff; that the sum claimed was for the use of certain railroad tracks, switches, depots and privileges, all of which were in the possession of and controlled by plaintiff, and for the hire of personalty and the services of the plaintiff's servants, and said sum cannot be apportioned so as to authorize a verdict for any sum on account of rent. This motion was sustained, and plaintiff excepted.

The testimony shows, that from July 18, 1888, to May, 1891, the Chattanooga, Rome & Columbus Railroad Company used the depot buildings, yards, grounds, side-tracks and other railroad terminal facilities belonging to the Rome Railroad Company in the city of Rome,

as its tenant. There was no written contract, but there was a distinct and definite agreement between the officers of the companies that the C., R. & C. Co. was to pay to the Rome Co., as rental for the premises and the use of its terminals, whatever they were worth for rent. Nothing has been paid on this rental account. About ten or twelve thousand dollars per annum, during the period it occupied and used the premises mentioned, would be a fair rental for the premises and for the uses to which the tenant put them. There was never any question of liability as to the C., R. & C. Co., as it at all times acknowledged its liability for rent, but on account of its financial necessities, at the repeated request of its president, the directors of the Rome Co. postponed taking any action to recover their rents until just prior to May 5, 1891. The C., R. & C. Co. was unable to buy terminals, and was compelled to rent those of the Rome Co. On account of the grades through the city it was almost impossible to operate the C., R. & C. R. R. without getting into the Rome R. R. yards, and in order to do business in Rome the C., R. & C. was virtually compelled to obtain the use of the yards, tracks, depot, etc., of the Rome R. R. This necessity was absolute and pressing; no other course was practicable. These terminals were used by the C., R. & C., not only for its local business in Rome, but also for its transfer business between other connecting roads in Rome, and it used the tracks of the Rome R. R. as a storage for cars going to and coming from other roads at Rome. It also used the depot buildings and offices for various officers, and virtually operated its transportation department from this point. By the use of these railroad facilities it was enabled to reach directly various manufacturers in Rome, without paying trackage or usual transfer charges, thus saving much money. Some of these Rome railroad tracks were also used by the C., R. & C. for its

bulk carload deliveries. It was beneficial and necessary to the C., R. & C. to rent these terminals. At first it was thought that the union of the business of the two roads in the same yard and depot would benefit the Rome road to some extent, and probably it was benefited thereby, but the benefits were mutual, and in the end it was clearly demonstrated that the defendant company enjoyed the larger share of the benefits arising from this arrangement. Besides the depot buildings, the terminals consisted of tracks and side-tracks. The Rome road switched cars for the C., R. & C. road, and would have had the right, under ruling of the State railroad commission, to charge trackage on all these cars; but did not charge the C., R. & C. anything for trackage but simply for rent. For part of the time the crew and engine of the Rome Co. did some of the switching, or the C., R. & C. may have run cars by itself with the permission of the Rome Co. Most of the time it was the crew and engine of the Rome Co., etc.

Plaintiff offered to proved that the Central Railroad Co. which bought the C., R. & C., and was its immediate successor, paid plaintiff $1,000 a month rent for the use of the same property as that leased to the C., R. & C., and did less business over these terminals than did the C., R. & C. This was rejected.

W. W. BROOKES and W. T. TURNBULL, for plaintiff.
J. BRANHAM, for defendant.