## TAYLOR *v.* CONEY, LOVEJOY & COMPANY.

Where the owner of land proposes to another person to rent him lands and agrees to take therefor so much money or a part of the crop, and such person accepts neither proposition but enters upon the land and makes a crop thereon, he is a tenant and not a cropper. Being a tenant, the title to the crops made by him is vested in him and not in the landlord, and as against a claim of title by the landlord or those claiming in privity with him, the crops are subject to executions against the tenant.

Argued June 3, — Decided July 8, 1897.

Levy and claim. Before Judge Smith. Pulaski superior court. August term, 1896.

*J. H. Martin*, for plaintiff.
*T. C. Taylor*, contra.

SIMMONS, C. J. An execution founded upon a judgment rendered March 7, 1887, against Leonard in favor of Taylor, was levied, September 19, 1893, upon certain corn, fodder and cotton as the property of Leonard. A claim was interposed by Coney, Lovejoy & Co., who held an unrecorded bill of sale or deed, "drawn on an ordinary warranty deed blank," and dated September 18, 1893, made to Coney, Lovejoy & Co. by J. M. McLemore, owner of the land upon which the crop was raised. This instrument purported, for and in consideration of $300 in cash, to convey two mules and "also my entire crops of corn, peas, potatoes, cane, cotton and seed grown by me and my tenants for the year 1893 in Pulaski county, Ga., on place purchased by subscriber from J. F. Pierce," etc. On the trial the plaintiff introduced the fi. fa. under which the

levy was made. The sheriff testified that the crops levied upon were at the time of the levy in the possession of Leonard who claimed them as his own and pointed them out to be levied upon; that both McLemore and Leonard were present, and that the former told Leonard to point out his own crop; and that the crop levied upon was on the place cultivated by Leonard.

The claimants introduced the conveyance above mentioned. McLemore testified, that he had "agreed to rent J. J. Leonard forty acres of land and a mule for $85, or he would let him have the land and mule for a part of the crop he made on the land. . . . Leonard did not say which offer he would accept, and the trade was never again mentioned at all. I did not work any of his crops. I did not work the crops for him. I only worked my own crops. Leonard himself planted and worked the forty acres just as he saw fit. I did not tell him what to make. . . . Leonard surrendered up the crops to me before the levy was made. . . I furnished Leonard just as I did my other tenants. . . Leonard turned over the crops to me . . because he owed me. I stood for him at Coney, Lovejoy & Co. . . I was the boss on the place and had possession of everything. I do not recollect of any rent note being given."

It was further shown that the deed was given to secure a debt of McLemore to Coney, Lovejoy & Co., and that no credit therefor had been given McLemore on the books of the firm. There was other testimony tending to show that Leonard had given McLemore a note for $85 for the rent of the land and mule.

The verdict was in favor of the claimant as to all of the property levied upon. The plaintiff made a motion for a new trial, upon the grounds that the verdict was contrary to law, contrary to the evidence, and contrary to certain specified portions of the charge of the court. The court granted a new trial as to the fodder involved, but refused a new trial as to the rest of the property levied upon. To this ruling the plaintiff excepted, alleging that the court erred in not granting a new trial generally. Of the grant of a new trial as to the fodder there is no complaint.

The levy was made under an execution against Leonard, and the property levied upon was claimed by Coney, Lovejoy & Co., under a conveyance from the owner of the land. The contest was as to whether the legal title was in the defendant in fi. fa. or in the claimant; and since whatever title the claimant may have had was derived from McLemore, we are led to a consideration of the nature of the relation which existed between the defendant in fi. fa. and the owner of the land upon which the crop was raised. To ascertain the rights of the parties arising from that relation, it is necessary to determine whether the defendant in fi. fa. was a tenant or a cropper, and we think that upon the determination of this question the whole case, in its final analysis, depends. A cropper is employed to work for part of the crop he makes. He is hired to work certain lands and receives in payment for his services an agreed share or portion of the fruits of the land. He is not entitled to the land, nor, until all advances are paid or a final division or settlement made, has he title to the whole or to any part of the crop. "The title to the crop, subject to the interest of the cropper therein, and the possession of the land, remain in the owner." Civil Code, § 3131. Where, on the other hand, the relation is that of landlord and tenant, entirely different conditions exist. The title to a crop raised on rented land is in the tenant, and not in the landlord. *Worrill* v. *Barnes*, 57 *Ga.* 404; *Wadley* v. *Williams*, 75 *Ga.* 272.

If the defendant in fi. fa. was a cropper, the title to the crop was in the owner of the land and was by him conveyed to the claimants, and the property was properly found not subject. If, however, the relation was that of landlord and tenant, the title to the crop was in the tenant, a conveyance of such crop by the landlord was inoperative to pass title, and the property should have been found subject. There was some scant evidence of a surrender of the crop by Leonard to McLemore to satisfy a debt of the former, but this we think immaterial, since, if the title was originally in Leonard, the property, even after it had been so "turned over," would be affected with the lien of the judgment. The title conveyed by such surrender would be ineffectual as against the judgment.

42

Where the owner of land proposes to another person to rent him lands and agrees to take therefor so much money or a part of the crop, and such person accepts neither proposition but enters upon the land and makes a crop, he is a tenant and not a cropper. In the case of *Rome R. R. Co.* v. *Chattanooga R. R. Co.*, 94 *Ga.* 422, this court held that where one person obtains and uses another's property, "if no amount of compensation be agreed upon, the law will imply an undertaking to pay such amount as may appear to be fair and reasonable. Under the statutory system established by the code, this compensation is, in its nature and character, rent." In the present case there was no express agreement of any kind which could fix the relation of Leonard and McLemore, and there were no facts from which a contract under which Leonard should work as cropper could be implied. The owner of the land granted to the defendant in fi. fa. the right to possess and enjoy the use of such land, the grant was accepted, and the relation of landlord and tenant arose between them. See Civil Code, § 3115. The relation of landlord and tenant existing, there was an implied agreement to pay rent in a fair and reasonable amount. This view is in harmony with the previous decisions of this court as to the distinctions between croppers and tenants.

For the use of the land the owner was, as we have just seen, to be compensated by the payment of rent; the land was in the possession of the tenant and the crop was entirely under his control. For advancements of necessary supplies, etc., made to the tenant, the landlord may have had a lien upon the crop made by the former; but the legal title to such crop was vested in the tenant and not in the landlord, and, as against a claim of title by the latter or those claiming in privity with him, the crop was subject to executions against the tenant.

For these reasons we think that the court erred in refusing to grant a new trial generally as to all of the property found not subject. *Judgment reversed. All the Justices concurring.*