## CHASON et al. v. O'NEAL et al.

1. Defendants in error move to dismiss the bill of exceptions, on the ground that it was not sued out within twenty days from the date of the judgment complained of; and this question being for decision by a full bench, and the Justices being equally divided in opinion on this question, Russell, C. J., and Hill and Hines, JJ., being of the opinion that the bill of exceptions should not be dismissed, and Beck, P. J., and Atkinson and Gilbert, JJ., being of the opinion that the bill of exceptions should be dismissed, the motion to dismiss the bill of exceptions is not sustained.

2. The owner of lands, after having made a deed thereto to secure a debt, can convey his equitable estate therein either absolutely or to secure a debt; and the sale of the lands under a power of sale in the junior security deed and the execution of a deed in pursuance of such sale to purchasers vest in the latter a good and valid title to the lands, subject to the prior security deed.

3. Notwithstanding the act of August 21, 1922 (Acts 1922, p. 114), which declares all crops to be personalty, the purchaser of lands under a power of sale in a security deed of older date than said act, after its passage, acquired title to crops growing on such lands, grown after the passage of this act, if they were grown and owned by the grantor in such deed; but if the grantor had in fact, prior to such sale, rented in good faith these lands to others, who raised such crops, such purchaser did not acquire title to them, but only the interest of the grantor in such deed in these crops.

(a) In view of the provision of the constitution of this State that "No . . ex post facto law, retroactive law, or law impairing the obligation of contracts" shall be passed, laws should be so construed; if this can reasonably be done, as to prescribe only for the future, and not to impair the obligation of contracts.

4. Such purchasers would be entitled to recover out of the crops grown on these lands such an amount as may appear to be fair and reasonable under the circumstances for the rent of the premises for the year in which the crops were grown, notwithstanding an agreement between the grantor and the alleged tenants, made prior to the sale of the lands, that such tenants were to pay no rent.

5. If there was in fact a tenancy and the intervenor purchased from the tenants these crops, without notice of landlord's lien or claim for rent, his title would be superior to the claim of the landlord for rent. The burden rests upon him to establish by proof his contention that he

was a bona fide purchaser of these crops without notice of the claim or lien of the plaintiffs for rent.

6. The court erred in not granting an injunction and continuing the receivership until the issues involved in the case could be tried.

7. Upon the hearing of an application for injunction and receiver in vacation, the judge was without jurisdiction to make a final disposition of the case and to award the proceeds of the crop in dispute, in the hands of the receiver, to the intervenor. *O. & W. O. Ry. Co.* v. *Wooten,* 139 *Ga.* 489 (77 S. E. 572) ; *Teutonia Club* v. *Howard,* 141 *Ga.* 79 (80 S. E. 290, Ann. Cas. 1915B, 1062).

No. 4170. JULY 19, 1924. REHEARING DENIED OCTOBER 1, 1924.

Equitable petition. Before Judge Yeomans. Seminole superior court. December 8, 1923.

Chason and Vanlandingham, on Aug. 6, 1923, filed their equitable petition against Coachman, returnable to the Oct., 1923, term of Seminole superior court, and made this case: On Dec. 3, 1919, Coachman executed and delivered to Chason his promissory note for the principal-sum of $805.20, due Nov. 1, 1920, with interest from maturity at 8 per cent. To secure said note Coachman executed to Chason, on said date, his deed to certain described lands, subject to a prior loan deed thereon in favor of the Empire Loan and Trust Company, for the principal sum of $3000. Said security deed from Coachman to Chason contained an irrevocable power of sale, which authorized Chason, at his option, upon default in the payment of said note by Coachman, to advertise and sell said lands in the manner prescribed in said security deed. Coachman defaulted in the payment of said note when it became due, and Chason advertised said lands for sale in accordance with said power of sale, and, on May 22, 1923, sold the same to petitioners, who were the highest and best bidders, subject to said prior loan deed in favor of the Empire Loan and Trust Company. On said date a deed was duly executed by Coachman, by Chason as his attorney in fact, to petitioners to said lands, subject to said prior loan deed. Said loan, so secured by said prior loan deed, has been assumed and renewed by petitioners in their name and they are responsible for the same. Interest thereon in the amount of $210 will be due Oct. 1, 1923. Petitioners bought at said sale under said security deed to Chason all the right, title, and equity of Coachman in said land. After their purchase they demanded possession from the defendant, which he refused and still refuses. On Aug. 25, 1923, petitioners brought

ejectment against defendant, to recover said premises and mesne profits. In said suit they prayed that the title to said premises be decreed in them, and that they have judgment against Coachman for the rents and profits of said property. Said suit is now pending in the superior court of Seminole County. The rental value of said premises is well worth $1000 per year, for which judgment is asked in said ejectment suit. Coachman is insolvent and unable to respond to plaintiffs for any judgment which they may recover against him for said rents and profits. They are entitled to recover from him said rents from May 22, 1923. The defendant is farming on said lands during 1923. He is gathering and disposing of the crops, and not applying the same to the payment of any indebtedness which plaintiffs have assumed against said premises or in payment of rent, but is appropriating the same to his own use. Petitioners are entitled to said crops for the purpose of paying said rents and for other purposes stated. Unless a court of equity will appoint a receiver to take charge of said premises, they will suffer irreparable damage. They pray the court to appoint a receiver to take charge of the premises, collect the rents due them, and to take charge of all the crops and to dispose of the same; that the money for said crops be paid into court to be disbursed under its orders and final judgment; and that the defendant be enjoined from interfering with the possession and management of said place by the receiver. This petition was duly verified. On Sept. 7, 1923, a temporary receiver was appointed to take charge of the premises and crops.

Coachman filed his unsworn answer to the petition. He admitted the execution and delivery of his note and security deed to plaintiffs. He denied that any title passed to them under said deed, because of the prior security deed of the Empire Loan & Trust Company. He admitted his default in the payment of his note to Chason, but from lack of information he could neither admit nor deny that his security deed to Chason contained a power of sale, and that the sale thereunder was made; but he alleged that if such sale was made, it was void and did not pass any title to plaintiffs. He admitted that plaintiffs had brought suit against him to recover these lands, and that he refused to deliver possession to them. He alleged that he placed his wife and three children in charge of said lands as tenants, without rent, and per-

mitted them to make a crop thereon and to use the same as their own, they to have whatever they made on the land. Under said agreement they entered into possession of said land, planted, cultivated, and raised crops thereon, which belonged to them, until they, on Aug. 28, 1923, sold said crops to M. E. O'Neal.

O'Neal, in his intervention, made these allegations: On Sept. 27, 1923, the court appointed a receiver to take charge of these lands and the crops thereon, and enjoined Coachman from interfering with the possession of the receiver, and further required the defendant to show cause why the restraining order should not be continued in effect and the appointment of a receiver made permanent. Whatever title plaintiffs have is only a title to the real estate, and does not cover the crops, for the reason that plaintiffs' title is derived from the purported sale of said lands under a security deed, and the crops, being personalty, did not pass with said sale. Woody, Fred, and Revere Coachman are the children of the defendant, and Nancy Coachman is his wife. The defendant, at the beginning of 1923, placed his wife and children in possession of said lands, with the privilege of making a crop and owning the same. Without any consideration the wife and children entered upon said lands and made the crops grown thereon. For a valuable consideration, on Aug. 25, 1923, before service of the petition in this case and before the order appointing a receiver, said wife and children conveyed to him all of the crops grown on said lands, after the same had matured. Under the law of Georgia it is immaterial whether the crops mature or not. Such crops are personalty, and the owners had the right to sell the same, and the security deed to the lands did not cover the crops and did not convey the crops. He attached to his intervention a copy of the bill of sale from the wife and children to him. He alleged the receiver had no right to take charge of or hold said crops, and that the title to them is in him. He prayed to be allowed to intervene, and that an order be passed requiring plaintiffs and the receiver to show cause why the receiver should not turn over to him the crops grown on said land. The judge sanctioned and ordered said intervention filed, and passed an order calling upon plaintiffs to show cause before him, on Dec. 3, 1923, why the prayers of the intervention should not be granted, and why the crops grown on said lands should not be turned over to the intervenor.

The cause came on to be heard before the judge on Dec. 8, 1923. On the hearing plaintiffs introduced the security deed from Coachman to Chason. They also introduced the deed made by Coachman, by Chason as his attorney in fact, to Chason and Vanlandingham. The intervenor introduced in evidence the bill of sale to him from Woody, Fred, Revere, and Nancy Coachman to said crops, for a consideration of $1150. He also introduced the affidavit of Coachman, who deposed that during 1923 he rented his lands on which plaintiffs held a security deed, to his wife and children; that they made a crop thereon, which they afterwards sold to O'Neal; that he had no right, title, interest, or claim in or to said crops, but consented for his wife and children to use said lands and have the crops raised thereon; that he is a very old man, and was unable to make a crop, and all he expected out of the use of said lands was permission to live with his wife and children.

The parties agreed that on Sept. 7, 1923, an order was granted appointing a receiver and was served on Sept. 8, 1923; that on Feb. 3, 1918, Coachman made a security deed to the Empire Loan & Trust Company; and that on Dec. 3, 1918, he made a second security deed to plaintiffs, under which said land was sold on May 22, 1923; that before the sale under said security deed Coachman rented said lands for the year 1923 to his wife and children, and Coachman swears he was to have no interest in the crops; that the wife and children of Coachman sold said crops to O'Neal; and that the crops had matured before they were sold.

The trial judge refused to appoint a permanent receiver, and directed the temporary receiver to report to the court his actings and doings, and to turn over to the clerk all funds arising from the crops, to sell any crops on hand and turn over said funds. He further directed that the receiver's fees be then fixed and paid, and the remainder of the funds be turned over to the intervenor. The order further provided "that thirty days is allowed plff. to sue out a bill of exceptions, and, if sued out in that time, that this order be superseded until the decision of the reviewing court is received." To this judgment plaintiffs excepted on the ground that it is contrary to law and evidence and is without evidence to support it, and is contrary to the principles of equity and justice.

A motion to dismiss the bill of exceptions was made, on the ground that the same was not certified within twenty days from the date of the judgment of the court complained of. The bill of exceptions has this recital: "Now come the plaintiffs in error within the time prescribed in said order and judgment, and within the time provided by law, after the signing of the order and judgment denying the injunction and receiver prayed for and directing the temporary receiver to turn over such funds in his hands as were derived from the sale of the crops to the clerk of the court thereafter to be turned over to T. S. Hawes and M. E. O'Neal, attorneys for defendants, and present this their bill of exceptions."

*House & Goree,* for plaintiffs.

*M. E. O'Neal, T. S. Hawes,* and *Pope & Bennet,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. Did the plaintiffs acquire title to these lands, subject to the prior security deed of the Empire Loan & Trust Company, under the sale made in pursuance of the power of sale contained in the junior security deed in favor of Chason? After having made the first security deed, Coachman could convey his equitable estate in these lands, either absolutely or to secure debt. *Owens* v. *Keeney,* 146 *Ga.* 257 (91 S. E. 65). The sale of the lands under the power in the junior security deed, and the execution of the deed in pursuance of such sale to the purchasers, vested in them a good and valid title to these lands, subject to the senior security deed. *Williams* v. *Foy Mfg. Co.,* 111 *Ga.* 856 (36 S. E. 927); *Beckcom* v. *Small,* 152 *Ga.* 149 (108 S. E. 542); *Cook* v. *Georgia F. & O. Co.,* 154 *Ga.* 41 (113 S. E. 145).

2. While the purchasers at the sale of these lands, under the power of sale contained in the junior security deed, and under the deed executed in pursuance of such sale, acquired a title to these lands on May 22, 1923, did they obtain title to the crops then growing on these lands? Prior to the act of August 21, 1922 (Acts 1922, p. 114), which declares all crops, matured or unmatured, to be personalty, such purchasers would have acquired title to such crops, if they were grown and owned by the grantor in the security deed. A sale made under such power would have the same force and effect as if made by the vendor in such deed; and crops, whether mature or immature, prior to said act, were parts of the realty and passed by a sale of the land, in the absence of con-

tractual reservation of the crops. *Newton County* v. *Boyd,* 148 *Ga.* 761 (98 S. E. 347) ; *Griffin* v. *Leggett,* 153 *Ga.* 663, 664 (112 S. E. 899). But if the grantor had, prior to such sale, rented these lands in good faith to others who had grown such crops, the purchasers at such sales would not acquire title thereto. In *Blitch* v. *Lee,* 115 *Ga.* 112 (41 S. E. 275), this court ruled that "A purchaser at an execution sale of land which has been rented by the defendant in execution, though the contract of rental was made subsequently to the date of the judgment upon which the execution was founded, acquires the title of the owner in the land, but only the interest of such owner in the growing crop thereon. And where the owner under the contract of rent has only the right to collect a stated sum as rent for the year, the purchaser has a right to collect this amount from the tenant, but has no further claim against him and no other interest in the crops of the year than may be necessary to secure the payment of the amount due by the tenant as rent under the contract with the owner." In *Garrison* v. *Parker,* 117 *Ga.* 537 (43 S. E. 849), this court made the same ruling in a case where the sale was under an execution which issued upon a judgment rendered upon a debt secured by a deed to lands, the judgment in that case being rendered subsequently to the date of the contract of rental between the grantor in the security deed and the tenant. This being so, under the law as it existed prior to the above-cited act, the purchasers in this case at the sale, made in pursuance of the power of sale in the junior security deed, would have acquired the title of the owner to these lands, subject to the senior security deed, but only the interest of the owner in the crops growing thereon, and against the tenant, if there were in fact a tenancy, the right to collect the rent for the year in which the sale took place.

The purchaser of the land therein embraced at a sale had under a power of sale created by such deed would have acquired the crops then grown on the land, if they were made and owned by the vendor, and would likewise have acquired the interest of the owner in these crops when they were grown and owned by the tenant of the vendor. This principle was based upon the theory that crops, especially when unmatured, were parts of the realty and passed with the sale thereof. Should the above-cited act be so construed as to deprive the vendee in a security deed of older

date than the act of these important rights and security? Paragraph 2 of section 3 of article 1 of the constitution of this State declares: "No . . ex post facto law, retroactive law, or law impairing the obligation of contracts" shall be passed. Civil Code (1910), § 6389. "Laws prescribe only for the future; they can not impair the obligation of contracts, nor generally have a retrospective operation." Civil Code (1910), § 6. It is a well-recognized canon of statutory construction, that if the statute is susceptible of two constructions, one which renders it constitutional and another which would render it unconstitutional, the former will be preferred, since the intent to pass an unconstitutional act will not be ascribed to the legislature. In order to avoid collision with the above constitutional provision, we hold that the above-cited act should be construed not to be applicable in determining the rights of the vendee in a security deed which had been executed prior to the date of that act. The rights of the vendee were fixed and determined by the law in force at the date of the execution of the security deed. This being so, the purchaser, under the power of sale embraced in such deed, acquired title to the crops then growing upon the land therein embraced, if they were made and owned by the vendor in the security deed. If the crops which were growing on the land at the date of such sale were made in fact by a tenant of the vendor in such deed, then such purchaser would not acquire a title to such crops, but only such interest as the landlord had therein for the payment of the rental of the land for the year in which the crops were grown.

3. Counsel for the intervenor rely upon *Blitch* v. *Lee* and *Garrison* v. *Parker,* supra; and assert, that, as under the alleged arrangement as to rent between the grantor in the security deed and his wife and children, the latter were to pay no rent, these purchasers are not entitled to recover any rent out of the crops grown on the place for that year. We do not think this contention is sound in law and morals. The grantor in the security deed does not become the tenant of the grantee or of his vendee by the mere making of such deed. *Ray* v. *Boyd,* 96 *Ga.* 808 (22 S. E. 916). Neither would the tenant of the grantor in such a deed become a tenant of the grantee before the latter had acquired an absolute title to the lands embraced in such deed. The tenant of the grantee in the security deed, however, rented the premises

embraced in such deed subject to such deed, and to the right of the grantee to terminate the lease by sale of such premises under judgment obtained on the secured debt, or by the sale of the premises under a power of sale contained in such deed. *Garrison* v. *Parker,* supra. When the lease of the tenant is thus terminated by a sale in either of the above ways, the right of the tenant in the premises ceases; and the purchaser at such sale can eject both the grantor in the security deed and his tenant therefrom. If, after such sale, the grantor and the tenant remain in possession of the premises, an obligation on the part of the grantor in the security deed and his tenant to pay rent will be implied. Civil Code (1910), § 3692. The grantee in such deed thus becomes the landlord, and the grantor, or the latter's tenant, the tenant of the purchasers; and the law gives to such landlord a special lien on the crop growing on the land for the rent during the year in which they were grown. Civil Code (1910), § 3340. In *Ray* v. *Boyd,* supra, the vendee in the security deed had not acquired title by sale under such deed. Such lien exists and is effective irrespective of the levy of a distress warrant. *Cochran* v. *Waits,* 127 *Ga.* 93 (56 S. E. 241). If the tenant of the grantor in the security deed remains in possession of the premises after the grantee has acquired the absolute title thereto by sale thereof, he will not be in any better position than the grantor would be in; and if he continues to cultivate and grow crops upon such land, these crops will be subject to the lien of the purchasers of the premises for the rent thereof. Under such circumstances, the purchasers of these lands would be entitled, as between them and such tenant, to collect, from the crops grown thereon, such an amount as may appear to be fair and reasonable under the circumstances for the rent of the premises for the year. *Rome R. Co.* v. *Chattanooga R. Co.,* 94 *Ga.* 422 (21 S. E. 69). Such purchasers would not be bound by a contract between the grantor and his tenants by which the latter were to pay no rent for these premises. Such an agreement would amount to a mere gift of the use of the land by the debtor, which could not be enforced against such purchasers, especially when the grantor was insolvent when the arrangement was made, and where such agreement was clearly intended to defraud the grantee or other person who might acquire the absolute title to the premises under a sale

had in pursuance of the power embraced in the security deed.
Civil Code (1910), § 4149. The true equity, between such pur-
chasers and the tenant, would be to permit the purchasers of these
lands to recover from the proceeds of the sale of the crops in the
hands of the receiver such an amount as would appear to be fair
and reasonable for the rent of these lands for the year in which
these crops were grown.

4, 5. Now what are the rights of the purchaser of these crops
from the tenants? As between the landlord and the tenant, title
to the crop is in the tenant. *Wadley* v. *Williams,* 75 *Ga.* 272. The
landlord has a special lien on such crops for the rent of the land
during the year in which they were grown. Civil Code (1910),
§ 3340. A bona fide purchaser of the crop from the tenant, with-
out notice of the lien of the landlord, will be protected against
the same. *Worrill* v. *Barnes,* 57 *Ga.* 404; *Thornton* v. *Carver,* 80
*Ga.* 397 (6 S. E. 915); *Holmes* v. *Pye,* 107 *Ga.* 784 (33 S. E.
816); *Lancaster* v. *Whiteside,* 108 *Ga.* 801 (33 S. E. 995); *Ben-
nett L. Co.* v. *Martin,* 132 *Ga.* 491 (64 S. E. 484). The burden
was on the intervenor to establish his contention that he was a
bona fide purchaser of these crops without notice of the lien of
the plaintiffs for rent. Curtis &c. Co. *v.* United States, 262 U. S.
215 (43 Sup. Ct. 570). In the absence of proof that he was such,
the court erred in ordering the rents turned over to the intervenor.
The introduction by the intervenor of a bill of sale from the
tenants to him of the crops would not alone be sufficient to carry
this burden.

6. Where the grantor in the security deed, after the lands
therein embraced have been duly sold under a power of sale
therein contained, wrongfully refuses to deliver possession thereof
to the purchasers, who are compelled to bring ejectment to obtain
possession, and where such grantor is insolvent and is collecting
and dissipating the rents, a court of equity should grant the
prayers of a petition, which is ancillary to the action of ejectment,
for an injunction to restrain the defendant from collecting the
rents of the lands, and for the appointment of a receiver to take
charge of the lands, collect and preserve the rents, and hold them
to abide the final judgment in the case.

7. The seventh headnote needs no elaboration.

*Judgment reversed. All the Justices concur.*