## VIRGINIA-CAROLINA CHEMICAL CO. *v.* FLOYD.

1. Where in 1920 an owner of lands in this State executed and delivered a properly attested deed conveying the lands to secure a debt, and conferring upon the grantee the power to sell the lands at public sale under certain conditions, upon the grantor's default in the payment of the debt, which deed was duly recorded on March 2, 1920, and where the grantee, acting within the terms of such power, sold the lands at public sale on May 25, 1923, executing a deed of conveyance to the purchaser, such sale and conveyance, in view of the provisions of the act of the General Assembly approved August 21, 1922, entitled "An act to declare that growing crops shall be personalty," etc., operated to vest in the purchaser the title to growing and unmatured crops planted and cultivated on the lands in 1923, prior to the sale. To hold otherwise would place upon the act referred to above such a construction as would render it unconstitutional and void, on the ground that it is obnoxious to the constitutional provision inhibiting laws that impair the obligation of contracts.

2. The foregoing in substance answers all the questions propounded by the Court of Appeals.

Nos. 4443, 4444. OCTOBER 18, 1924. REHEARING DENIED DECEMBER 19, 1924.

Questions certified by Court of Appeals (Case No. 15544).

The following questions were certified by the Court of Appeals:

"1. Where in 1920 an owner of lands in this State executed and delivered a properly attested deed conveying the lands to secure a debt, and conferring upon the grantee the power to sell the lands at public sale under certain conditions, upon the grantor's default in the payment of the debt, which deed was duly recorded on March 2, 1920, and where the grantee, acting within the terms of such power, sold the lands at public sale on May 25, 1923, executing a deed of conveyance to the purchaser, did such sale and conveyance, in view of the provisions of the act of the General Assembly approved August 21, 1922, entitled 'An act to declare that growing crops shall be personalty, to provide that mortgages or other liens or conveyances thereof shall be attested and recorded as chattel mortgages, to provide that no levy on unmatured crops shall be made out; and for other purposes' (Ga. L. 1922, p. 114), operate to vest in the purchaser the title to growing and unmatured crops planted and cultivated on the lands in 1923, prior to the sale, by the grantor in the security deed in possession; the case being one where the title to such crops would have so vested under the law as it existed before the passage of this act?

"2. In other words, where on February 17, 1920, an owner of

lands in this State executed and delivered a properly attested deed conveying the lands to secure a debt, and conferring upon the grantor the power to sell the lands at public sale under certain conditions, upon the grantor's default in the payment of the debt, which deed was duly recorded on March 2, 1920, and where another creditor of the grantor in the deed procured a personal judgment against him in a superior court in November, 1920, and a fi. fa. issued upon such judgment was, on November 15, 1920, duly entered on the general execution docket of the county of the grantor's residence, being the same county in which the lands were situated. and where the grantee in the security deed, acting within the terms of the power therein contained, sold the lands at public sale on May 25, 1923, executing a deed to the purchaser, did such sale and conveyance, in view of the provisions of the act of the General Assembly approved August 21, 1922, entitled 'An act to declare that growing crops shall be personalty, to provide that mortgages or other liens or conveyances thereof shall be attested and recorded as chattel mortgages, to provide that no levy on unmatured crops shall be made out; and for other purposes'. (Ga. L. 1922, p. 114), operate to divest the lien of the above-mentioned fi. fa. upon crops planted and cultivated upon the lands by the grantor in the security deed in the year 1923, prior to the sale of May 25, the same being still unmatured at that time, and the case being one where such lien would have been divested under the law as it existed prior to this act?

"(a)    Did the purchaser at such sale acquire title to such crops merely in virtue of the security deed and the sale and conveyance made to him under the power of sale therein contained; or did the title to the crops after such sale, and in the absence of any other sale by the grantor in the security deed, remain in such grantor, the defendant in the fi. fa.?"

*James W. Harris* and *Pope & Bennet,* for plaintiff.

*H. A. Wilkinson,* for defendant.

BECK, P. J.    We are of the opinion that the sale and conveyance of the lands referred to in the first question, under the facts there recited, would operate to "vest in the purchaser the title to growing and unmatured crops planted and cultivated on the lands in 1923, prior to the sale, by the grantor in the security deed in possession, the case being one where the title to such crops would have

so vested under the law as it existed before this act," the act referred to being the act of the General Assembly approved August 21, 1922, entitled "An act to declare that growing crops shall be personalty," etc. (Ga. L. 1922, p. 114). That law provides: (1) that from and after the passage of the act all crops, matured or unmatured, are declared to be personalty; (2) that mortgages or other liens or conveyances of crops, matured or unmatured, shall be attested and recorded as chattel mortgages and under the laws governing the same; (3) that levies on unmatured crops are forbidden. This is the substance of the entire act, omitting the repealing clause. We are of the opinion that to give any other construction to the act would render the same unconstitutional and void, on the ground that it impairs the obligation of a contract. It is not now necessary to construe the act in its entirety, and to say what it means, other than to say that it possibly may be given a construction that will not render it obnoxious to that clause of the constitution referred to. Under the contract referred to in the question we are now dealing with, the grantee in the security deed had a perfect contract right to sell the land on the 25th day of May, 1923. He exercised that right. The land was purchased at the sale held in conformity with the written authority given in the deed to the grantee. Up to that point the rights of no party to this contract had been violated or impaired. The purchaser at that sale also obtained a perfect right, and that was the right, upon the payment of the purchase-price, to enter upon the lands in question and to occupy every foot of them. Under the law as it stood before the act of August 21, 1922, the title to the growing crops passed with the land when it was sold. That is the law, and it is assumed to have been the law in the question propounded. Could the legislature pass an act that would divest the purchaser at such a sale as that referred to of what he would have acquired under the sale before the passage of the act? Or, in other words, would an act tending to divest him of that right impair the obligation of his contract? The grantee in the security deed had, under the law prior to the act of 1922, the right to effect the collection of his claim by the remedies provided in the deed itself executed to him by the grantor, and the title to certain property was vested in him under the deed. Upon that property he had the right to go to collect his debt. To collect that debt he

had to sell the land; and to make that sale effectual, the property had to be delivered and the right of entry given to the purchaser. If the grantor could hold on to the growing crop, then by necessary implication he had the right to enter upon the land to cultivate, gather, and remove it. If the lands were all cultivatable and planted in growing crops at the time of the sale, and if the construction insisted upon by the plaintiff in error should be given to the act of 1922, the owner of the crop would virtually remain in possession of the entire property for several months after the sale, that is, until the maturity of the crop. It seems to us that it does not require any argument to show that to so hold would impair the value and to a very material extent deprive the grantee in the security deed of the property which had been conveyed to him to secure his debt. In the case of *Sparger* v. *Cumpton,* 54 *Ga.* 355, it was said: "The true view is, that to pass any law, the object and effect of which is to lessen the means the law furnishes, at the date of a contract, for its enforcement, comes within the constitutional prohibition, because such a law impairs the right of the creditor, lessens the value of his debt, and releases the debtor to that extent from his obligation to pay, and thus impairs the obligation of the contract. The contract in this case is the debtor's agreement to pay. The constitutional provision is, that this obligation shall not be impaired. The courts have held that materially to lessen the remedies lessens, weakens, and impairs this obligation. No court has ever held that the remedy can not be enlarged, since in no sense can that *impair* the obligation to pay."

It is strongly urged in the written brief and argument of counsel for plaintiff in error, while conceding that if the act of 1922 had taken away any of the security contracted for in the security deed (for instance, any of the property then in existence covered by the security deed) it might be that the act would impair the obligation of the contract, that inasmuch as the act of 1922 applies only to property (that is, a crop) which was not in existence when this security deed was given, but was, on the contrary, a mere possibility, and inasmuch as the mere possibility could not be the subject-matter of a valid contract of sale or mortgage, the act referred to, as applied to crops planted after its passage, can not be said to impair the obligation of the valid contract embodied in the security deed; because, if the grantor in the security deed had

attempted to make the contract therein apply to future crops that were not even planted and not in existence, the contract would to that extent have been void. And moreover (to state further the contention of the plaintiff in error), the maker of the security deed was not bound, under the contract embodied in the security deed, to plant any crop; his planting the crops was not a certainty, or in contemplation of the contract, but a mere contingency which might or might not occur, and the obligation of a contract within the meaning of the constitution is a valid, subsisting obligation and not a contingent or speculative one; citing the case of Ochiltree v. Railroad Co., 21 Wall. 249 (22 L. ed. 546).

It may be true, as contended in this argument, that crops to be planted in the future could not, at the time of the execution of the security deed, have been mortgaged or conveyed; nevertheless, under the contract, the grantee in the security deed had the right to sell the land and all of its elements of value; and it was in the contemplation of the parties that whatever might be growing on the land at the time of the sale, constituting an element of value, would be sold if the land should be sold to enforce the claim. To allow the grantor of the deed to withhold the crops, and prevent the enjoyment of the lands covered by the deed, would be to destroy an element of value of the land conveyed. And if the act of 1922 attempts to put it into the power of a grantor in a deed like this to subtract a material element of value from the land, then it impairs the security taken by the creditor as embodied in the contract and impairs that contract. The right of the purchaser at the sale to immediately enter and take possession of the land and all of its elements of value was as complete as his right to a deed of conveyance of the land itself. "Before maturity of crops they are appurtenant to the land, constitute a part thereof, and pass by and with the land. Before maturity the crops only constitute an element of value, and are not themselves distinct chattels." *Scolley* v. *Pollock,* 65 *Ga.* 339.

It is also earnestly urged by counsel for plaintiff in error in their written argument that a State legislature has the power and right to make a valid law which shall prescribe the rights of a producer or creator of property thereafter produced or created—and also the rights of his assignees or mortgagees—beyond question; that it is a valid exercise of the police power of a State for the legisla-

ture to say whether or not such property (crop) thereafter produced shall be considered realty, on the one hand, or personalty, on the other hand. "Police power covers a broader field than mere health and morals." In support of this contention quotations are made from several decisions, among them the following: "The police power of the State can not be abdicated, . . and all contract and property rights are held subject to its fair exercise; it embraces regulations designed to promote public convenience or general welfare, as well as those in the interest of the public health, morals or safety." Chicago &c. R. Co. *v.* Tranbarger, 238 U. S. 67 (7) (35 Sup. Ct. 678, 59 L. ed. 1204). And again, "The plaintiff trusted this corporation and the members composing it at the time the contract was made. It can not be said that he gave credit beyond this; for what right had he to assume that other stock would be taken? It may be that he expected this would be done, and that thereby his security would be increased,—but the obligation of a contract, within the meaning of the constitution, is a valid subsisting obligation, not a contingent or speculative one. It was no part of the obligation of the contract that future stock should be taken. The value of it would be enhanced if this were done, but the obligation of it would be the same whether the stock was taken or not." Ochiltree *v.* Railroad Co., 21 Wall. 249 (supra). And other authorities are cited in support of the contention of plaintiff in error. We do not think that any of these cases hold that a law authorizing such a diminution in the value of the security as the act of 1922 would authorize, should we construe it according to the contention of the plaintiff in error, would not be a law impairing the obligation of a contract; and we are clear that none of them hold that a law impairing the value of the security of a debt, like the security with which we are now dealing, in so important and material a particular, would not be a law impairing the obligation of a contract. The provisions of the stay-law, enacted by the General Assembly of this State in 1866, might well have been regarded as a law passed for the promotion of the general welfare and the vital interests of the public. As a matter of history, we know how difficult it was in that day for the members of the debtor class to meet their obligations. Our labor system had been destroyed; people were without money to discharge their debts—almost without means of procuring the necessary agri-

cultural implements and fertilizers for the cultivation of crops. And yet the stay-law referred to was held to be unconstitutional and void, in a decision by this court in the cases of *Aycock* v. *Martin, Cunningham* v. *Calclough, Hendry* v. *Gunn,* and *Heard* v. *Jones,* 37 *Ga.* 124 (92 Am. D. 56). The argument there made, it seems to us, answers the contention that the construction put upon the act of 1922 by the plaintiff in error in this case is authorized upon the ground that the act may be regarded as an exercise of the police power of the State, and we do not hesitate to reproduce a large part of that argument:

"The defendant's obligation to perform his contract in accordance with its terms was a *perfect* obligation, because the plaintiff, at the time the contract was made, had the legal right, under the *then existing law* of the State, to have *compelled* its performance. The defendant's obligation to perform his contract was just what that *existing law* made it, just what that existing law required, and would have *compelled* to be done for its performance, in behalf of the plaintiff, the other party to it. The defendant's obligation to perform his contract, under the then existing law, was *perfect,* and the plaintiff's right to have that obligation performed as prescribed by that existing law was also a *perfect right.* Having shown that the defendant, by the terms and stipulations of his contract, had imposed upon himself a *perfect legal obligation* to perform it, and that the plaintiff had a *perfect legal right* to have that legal obligation performed in accordance with the existing law, which created and defined that obligation, let us now inquire what acts of the Legislature will *impair* the legal obligation of contracts within the constitutional prohibition? In the case of the *Justices of the Inferior Court of Morgan County* v. *Sparks et al.* (6th *Ga. R.* 439), this court have answered the question in the most explicit terms. The court say in that case, 'The objection to a law on the ground of its impairing the obligation of a contract does not depend on the extent of the change which the law may make in it. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, or imposing *conditions* not expressed in the contract or dispensing with the performance of those which are, however minute or apparently immaterial in their effect upon the contract of the parties, *impairs its obligation* and, consequently, is within the constitutional pro-

hibition.' Although the constitutionality of the stay-law was not involved in that case, yet the legal rule, applicable to acts of the legislature, impairing the obligation of contracts, was correctly stated, and was again reiterated in *Winter* v. *Jones*, 10th *Ga. R.* 195.

"We have endeavored to show what was the extent of the defendant's legal obligation to the plaintiff at the time the contract was made. We have shown what is the rule of law applicable to this particular class of cases, as asserted and recognized by this court. Now let us examine the act of the 13th of December, 1866, and see whether, according to the rule recognized by this court (as well as all other courts where the laws of the land are independently and impartially administered), that act *impairs* the legal obligation of the contract between the parties in this case? The act is declared to be 'An act for the relief of the people of Georgia, and to prevent the levy and sale of property under certain circumstances.' The first section of the act declares that 'there shall be no levy and sale of property of defendants in this State under any execution founded on any judgment, order, or decree of any court heretofore or hereafter to be rendered upon any contract or liability, made or incurred prior to the first of June, 1865, or in renewal thereof, though bearing a subsquent date, except in the following manner: For one third of the principal and interest due on said execution and no more, which may be levied on or after the first of January, 1868, one third of the whole on or after the first of January, 1869, and the remaining one third on or after the first of January, 1870, unless the defendant shall endorse on the execution a waiver of the benefit of this act.' The fourth section of this act further declares that 'any officer, or other person, violating this act shall be guilty of *trespass,* and liable to the defendant, or person injured, in damages, not less than the amount of the judgment, order, or decree upon which he is proceeding, as in other cases of trespass.' The existing law of this State, at the time the contract was made between the parties, on which this judgment and execution is founded, and which the plaintiff is seeking to enforce, imposed the legal obligation upon the defendant to perform it, in accordance with its terms and stipulations. That legal obligation was in full force and binding upon him on the 13th day of December, 1866, when the act in question was passed. Does the act of the

13th of December, 1866, postpone the performance of that legal obligation? If it does, then in the explicit words of this court, before cited, it *impairs the legal obligation of the contract*. Does the act of 1866 impose *conditions* upon the parties not expressed in the contract, or in the law applicable to the contract at the time it was made? If it does, then, according to the same authority, it impairs the legal obligation of the contract. Does the act of 1866 dispense with the performance of any part of the legal obligation of the defendant to perform his contract, as that legal obligation existed, under the law, at the time of its enactment? If it does, then, according to the well-established rule of law, recognized and declared by this court in the two cases before cited, it impairs the legal obligation of the contract.

"Now, in what manner does the act of 1866 impair the legal obligation of the defendant's contract? At the time of the passage of that act the defendant's legal obligation to pay the debt, included in the judgment, was upon him in all its force and effect, as the same existed under the law at the time the contract was made. Now, by the act of 1866, he is relieved from the performance of that legal obligation until the first day of January, 1868, absolutely, and for two thirds thereof until the first day of January, 1869, and for one third thereof until the first of January, 1870. That act expressly declares that the defendant's legal obligation to perform his contract shall not be enforced by the process of the court until the first day of January, 1868, and after that time only in the manner before stated. To that extent, the defendant is relieved from the performance of his legal obligation to the plaintiff, as the same existed under the law at the time the contract was made, by the act of 1866. The fourth section of that act also declares that any officer, or other person (which includes the plaintiff), who shall violate the provision of the act of 1866, shall be guilty of trespass, and liable to the defendant in damages, etc. Thus it will be perceived that by the act of 1866 the defendant is not only relieved from his legal obligation to the plaintiff to perform his contract for a definite period of time, but that any officer or other person who shall enforce the performance of the defendant's legal obligation within that time to perform his contract, as the same existed at the time the contract was made, shall be guilty of trespass and punished as a trespasser. The act not only

relieves the defendant from his legal obligation to perform his contract with the plaintiff in the manner specified therein, but actually declares that the plaintiff shall be guilty of trespass if he shall enforce the performance of the defendant's legal obligation to perform his contract, imposed by the laws of the State at the time the contract was made. The legal obligation of the contract is impaired, because the plaintiff can not enforce the defendant's legal obligation to perform it, without being a trespasser and liable for damages under the act."

The police power of the State is not referred to in this decision, but the argument against the validity of the law demonstrates that a law like this act of 1922 could not be enforced on the ground that it falls within the police power because it was for the general welfare and necessary to the public interest and for the best interest of a large class of citizens falling within the debtor class, who had been compelled to give security deeds like the one here under consideration. See also numerous decisions of this court holding that constitutional provisions and statutes increasing homestead exemptions were void as to judgments previously recorded. See the case of *Chason* v. *O'Neal,* 158 *Ga.* 725 (124 S. E. 519). It, in effect, rules a controlling principle involved in the instant case. A motion to review and overrule that case has been made; but upon review we adhere to that decision. See also the case of *Gunn* v. Barry, 82 U. S. 610 (21 L. ed. 212). However anxious we may be to afford relief to those of our citizens who, without fault upon their part, are burdened with debt and in consequence thereof were compelled, prior to the act of 1922, to give security deeds conveying their lands to their creditors, we are compelled to decide the cases as they arise according to the law of the land. While the purchaser of the land in question was not a party to the deed, the contract in question, his relation to it, and his interest in the subject-matter are such that he could make the constitutional question involved here.

It follows from what we have said above that the other two questions propounded should also be answered in the affirmative.

*All the Justices concur.*