24642. PIEDMONT AGRICULTURAL CREDIT CORPORATION *v.* NORTHEASTERN BANKING COMPANY.

572

DECIDED JULY 26, 1935.

*T. J. Shackelford, H. W. Davis,* for plaintiff.
*E. C. Stark,* for defendant.

GUERRY, J. The Piedmont Agricultural Credit Corporation brought a trover action against the Northeastern Banking Company to recover 12 bales of cotton. The trial resulted in a verdict for the defendant, and the plaintiff excepts. The evidence shows that on March 24, 1930, E. O. Fitzpatrick executed and delivered to the plaintiff a bill of sale conveying all crops grown or to be grown by him within 12 months from the date of the contract, for the purpose of securing a promissory note in the sum of $2500, representing an advance of money to plant, cultivate, make, and harvest the crop. This bill of sale was recorded March 25, 1930, in the county where the land lay on which the crops were to be grown. Thereafter, on May 26, 1930, E. O. Fitzpatrick conveyed said lands by a warranty deed to the defendant, and at the same time executed a rent note in the sum of $600 for the lands for the year 1930. E. O. Fitzpatrick, prior to 1930, executed a security deed to defendant, and at the time of the execution of the warranty deed no further consideration was paid to Fitzpatrick. Plaintiff made advances to E. O. Fitzpatrick under said contract, in excess of $2100. E. O. Fitzpatrick was under contract with the Cotton Co-operative Association to sell through them all the cotton he raised for the year 1930, and by agreement with the plaintiff all the cotton raised was to be sold by this Cotton Association and any advances made thereon to be sent to the plaintiff until the note was paid in full. E. O. Fitzpatrick testified: "I only made forty-eight bales of cotton in 1930." He shipped to the Cotton Association 36 of these bales,

and the advances made to him on this cotton were, under the assignment made, sent to the plaintiff to be credited on his note. On October 9, 1930, Fitzpatrick shipped to the Georgia Growers Cooperative Association at Athens, Georgia, the twelve bales of cotton in dispute. They were delivered to the railroad company and a bill of lading issued therefor. Under the assignment, any advances made by the Cotton Association were to be sent to the plaintiff. Fitzpatrick turned the bill of lading over to the plaintiff. At this time the defendant foreclosed its distress warrant for the rent evidenced by the rent note given May 26, 1930. The sheriff seized the 12 bales of cotton, weighing 5650 pounds, and after due advertisement the cotton was sold and the defendant became the purchaser at the price of nine cents per pound, and the rent note of E. O. Fitzpatrick was credited with $493—the proceeds of the sale. An agent of the plaintiff was present at the sale, but did not file any claim or take any action to prevent it. The present trover action was afterwards filed. The evidence for the plaintiff showed, without dispute, that advances of over $2000 were made to E. O. Fitzpatrick under the bill of sale contract, and that it only received from the Cotton Association, as proceeds from the 36 bales of cotton, $1230.50, and there was a balance of over $800 due it under the contract. The average price of cotton that fall was not in excess of ten cents per pound.

█ The question presented in the case at bar is one of title. Under the act of 1925 (Ga. L. 1925, pp. 118-19) advances made for the purpose of planting, cultivating, making, or harvesting a crop or crops may be secured by a bill of sale to secure a debt, under section 67-1301 of the Code of 1933, covering the crop or crops to be grown by the borrower within 12 months from the date of such bill of sale. The title to the crop or crops to be grown by the borrower within 12 months from the date of the bill of sale passes to the lender under the terms of this act. Under the act of 1922 (Ga. L. 1922, p. 114), all crops matured or unmatured are declared to be personalty. A security deed to the lands, executed after the passage of this act, does not ordinarily comprehend the crops matured or unmatured on the lands. Prior to the act of 1922, declaring crops to be personalty, the purchaser of lands under a power of sale in a security deed acquired title to the crops growing thereon only when they were grown by the grantor; but if the grantor had

in fact prior to such sale rented in good faith these lands to others, who raised the crops, the purchaser did not acquire title to them, but acquired only the interest of the grantor in such deed in these crops. *Chason* v. *O'Neal*, 158 *Ga.* 725 (3) (124 S. E. 519); *Virginia-Carolina Chemical Co.* v. *Floyd*, 159 *Ga.* 311 (125 S. E. 709); *Hix* v. *Williams*, 42 *Ga. App.* 143 (155 S. E. 355); *Brooks* v. *Causey*, 36 *Ga. App.* 233 (136 S. E. 282). While a purchaser of lands under a power of sale in a deed may acquire all the rights of the grantor in the deed, he acquires no greater rights than the grantor had. The grantor who has given a bill of sale to crops for advances in the growing, planting, cultivating, etc., of such crops within the twelve months period can not, by selling his interest in the lands to another and then by becoming the tenant of such other, defeat the rights of the lender in the bill of sale whose rights have already become vested. The purchaser at such sale, whether under the power contained in the security deed or by a voluntary conveyance, as in the present case, does not thereby defeat the rights of the holder of the bill of sale. In *Finn* v. *Reese*, 36 *Ga. App.* 591 (137 S. E. 574), it was held that the holder of a bill of sale who had foreclosed it as a mortgage should, under a rule distributing the proceeds of the sale of such crops covered by the bill of sale, prevail over the purchaser of the land under power of sale in the security deed, who had distrained for the rent of the land. The defendant in the present case does not claim as the purchaser under the power of sale, but, in effect, claims as the voluntary transferee from the grantor in such security deed. He acquired title by warranty deed to the land after the grantor had placed a valid bill of sale to the crops thereon. The title to such crops were not in the grantor until the debt representing advances and covered in the bill of sale was paid. The grantee was a purchaser with notice and was not entitled to distrain for rent until such debt had been paid.

It is insisted, however, that the plaintiff in this case stood by at the sale and, without filing a claim, allowed the defendant to become the purchaser thereof. It is apparent from the evidence that the defendant became the purchaser of the land and accepted the rent note from Fitzpatrick with full knowledge of the claim of plaintiff under the bill of sale. No innocent third party is involved. As was said in *Lawless* v. *Orr*, 122 *Ga.* 276 (50 S. E. 85), "The failure to file a claim to property which has been levied on

will not estop the true owner from asserting his title by an action of trover against the purchaser at the sale under the execution, such owner having done nothing that had a tendency to mislead the purchaser as to the owner's relation to the property and the title." See, also, in this connection, *Continental Casualty Co.* v. *White,* 178 *Ga.* 287, 290 (173 S. E. 117) ; *Alliance Insurance Co.* v. *Williamson,* 36 *Ga. App.* 497, 500 (137 S. E. 277); *Seaboard Air-Line Ry. Co.* v. *Holliday,* 165 *Ga.* 200 (140 S. E. 507).

■ The plea of payment was not sustained by the evidence. The defendant introduced no evidence tending to show that Fitzpatrick had paid the amount advanced to him by the plaintiff. The evidence showed that only 36 bales of cotton had been delivered to the Cotton Association for the benefit of the plaintiff and that there had only been advanced to the plaintiff thereon the sum of $1230, and that there was a balance due on said bill of sale in excess of $800. Until this amount is paid, the defendant's rights as landlord are postponed, as against the crops raised on the land for that year. The evidence was entirely insufficient to support the verdict, and, as it was incumbent on the defendant to establish this affirmative defense, the court should have granted a new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*